We'll turn to the next item on our calendar, which is U.S. Bank National Association v. East Fordham. Counsel? Yes, Your Honor. Good afternoon. This is Partha Chattarajah. I speak for the trustee appellant, U.S. Bank National Association. Before I get started, I feel that I need to disclose to the hour or so before I'm speaking right now during the course of this morning's arguments, which is that the Appellate Division First Department has issued an order affirming the decision of the lower court with regard to the evidentiary hearing that was held with respect to the as-stabilized-as-is appraisal reports in the court below with respect to plaintiff's claims. That doesn't change, I believe, any of the positions that we've taken, but I didn't feel it so far. Could you just clarify that ruling? Absolutely. I take it that what the court did was it says that notwithstanding that the estimators purported to make as-is estimations, that these were, in effect, as-stabilized estimations. That's right, Your Honor. At this point, there is an Appellate Division ruling that what the defendant did in this case, the plaintiff did in the state case, was that they complied with the agreement in question. That is correct. I think that there are still certain... There's no breach, right? No breach by the plaintiff? East Fordham. That's not correct, Your Honor, with respect, and I'll explain exactly why. Your question crystallizes and has managed to bring to a head the big crescendo to my argument, which is this. Whether or not the appraisals were as-is, as they say on their face, or as-stabilized as the Bronx Supreme Court found, and the Appellate Division has just affirmed based on the evidentiary hearing, the fact remains that the loan matured in March 2017, and there's a giant principal payment that hasn't been made for several years. Now, the plaintiff, after having obtained a favorable ruling that has just been affirmed today, moved for summary judgment based on the Bronx Supreme Court's finding, and the fact is that the Bronx Supreme Court took the view that it could not grant summary judgment in the plaintiff's favor. That was its June 24, 2019, ruling on summary judgment. And so that is... The question of whether they are now entitled to judgment on their claims is still an open question to be litigated in Bronx Supreme Court in the fullness of time. So that's why I said that this doesn't actually change our position. The reality is that when the parties briefed the issue, this appeal was out there, but our position doesn't depend on the First Department's ruling with respect to this issue. And the fact of there being a breach is simply that we haven't been paid. It's true that during several years, many years actually, since the filing of the litigation in Bronx Supreme Court, there was a series of injunctions, and each of these injunctions prevented us from declaring an event of default. So we had to hold off on declaring an event, and the plaintiff didn't make any loan service payments, and then they didn't pay the principal payment at the time of maturity. But the fact that the appraisals may be deemed to be... Notwithstanding the face of them, it doesn't change the fact that they haven't paid. And we... But excuse me, Mr. Chatterjee, I thought that their position was that they tendered payment based on the opportunity to accelerate the mortgage payment because they submitted the payment. Isn't that what their litigation position is? Their litigation position is... Judge Lynch, you stated it perfectly, but I think that the question of whether we breached by failing to accept these appraisal reports that are on their face, say as is, when they're supposed to say as stabilized, is a separate question of whether we're entitled to the principal payment now. It can't be the case that because they tendered payment back in 2014 and were purported to be willing and able to pay this amount of money that we took the position was not correct to pay off the loan. It can't be that we're now not entitled to any payments whatsoever. If they are prepared to pay... I thought you were entitled to... The point was now that you're entitled to the payment that was tendered. Their litigation position is that we are entitled to the payment that was tendered back in 2014 without any interest since that time, without anything else. And that is one of the issues. Well, why couldn't that be true? If the payment, and I'm not prejudging this, this is perhaps what is still before the Bronx Supreme Court. If what should have happened in 2014 was here's your money and you said no, why should you get interest between 2014 and now rather than just be told you should have accepted this back then? So if you want to take it now, take it. I understand that they're not entitled to never pay you anything, but it sounds to me like this is something where unless you plan to seek further review in the New York Court of Appeals, it seems fairly ripe for settlement. Well, Your Honor, I can't speak to what settlement discussions may take place in light of this ruling. I also can't opine, as I say to Jay, like having literally received and read the opinion moments, literally minutes before. Sure, excuse me. Of course, of course, of course, you may be entitled to, you are entitled to whatever time you have to decide whether to go to the Court of Appeals. And if you decide that that's a good thing to do, to go and do it. But one of the things that troubles me about this case is, you know, I'm very receptive to your argument, frankly, that the district court here did not really do the work that we've generally required be done in deciding whether Colorado River abstention is appropriate. On the other hand, it seems to me that the more the case in the state court proceeds, the more ridiculous it starts to seem that we should be here trying to re-litigate all the issues that are, you know, or be bound by race judicata decisions or collateral estoppel decisions that were made in the state court, all in the interest of like an expedited foreclosure proceeding. You know, maybe there's some argument for that when the state court litigation seems to be dead in the water and nothing's happening. But that seems to be progressing to a resolution that, again, at least if there's not going to be further appeal, and maybe there will be, resolves the principal issue that divides the parties. And why don't, why don't you all just go back to the state court and either litigate it or settle it? It seems like a rather strange thing to be asking our district court to now take over the litigation or proceed on issues that are largely resolved. Your Honor, I'm sorry. Is that your position? I'm just echoing what Judge Lynch said. Is it your position that Judge Marrero should not abstain now? Yes, it is, Your Honor. And I can address that in several different ways. Most urgently is the receiver issue. You know, obviously with the horrendous coronavirus situation that's going on and everything else, the value of commercial properties, particularly properties that have retail and so on, is very much in flux. We are, under our loan agreement and mortgage, entitled to a reservation of cash collateral. And we have had no transparency into what's going on with our collateral, the real property, the personal property, and so on, for many years. And we have a need to protect ourselves that is heightened under the current circumstance. Now, it happens to be the case, and I don't want to place too much reliance on this because I know how unappealing it is to do so, but it happens to be the case that right now the state court is not entertaining such applications. In fact, there's nothing that we can file in state court. So our need for a receiver is really quite urgent, and that is something that the district court could and should do if it were to take jurisdiction of this matter. Well, they could do that, right? Because the district court did not dismiss on the basis of Colorado River. The district court just stayed the proceeding to await the decision that you just reported, and then would address in greater depth whatever arguments are going to be made about further abstention or not. And all the arguments that trying to make to us now might have purchasing power, but before the district court, not before us, right? I mean, you can go back to the district court now and say, you know, now we've got a change of circumstances, so we don't think your stay should stay in place, and we would like to go forward with a litigation. And there's nothing to prevent that. The court hasn't dismissed that case. Is that correct? Not exactly, Judge Walker. It is true that the court did issue sort of what I would call an interim decision, saying that it would stay the case pending the resolution of the summary judgment motion. That did then occur, not more than, you know, maybe a month and a half later, and we notified the court, in fact, that the state court had denied the summary judgment motion, and, you know, so there wasn't going to be sort of a resolution from that ruling. And that was when Judge Marrero issued his decision staying at pending final judgment in the state court action. So right now, as I read Judge Marrero's order, which is on appeal before this court, we are stayed, and we can't go back to him and seek the appointment of a receiver. If the court, of this court, were to issue a mandate permitting us to do or lifting the state to that extent, that would certainly address the receiver concern, the receivership concern. I'm sorry, am I confused about the state court proceeding not being, just not being a determinant in the state court proceeding, this appellate division ruling? Judge Walker, there is no chance that you're confused. I'm just being an ineffective advocate if I didn't get this across. It is not a final determination. The reality is that this evidentiary hearing, which was on this as stabilized, as appraised issue, is just one of the several issues that are outstanding in that case. And the Supreme Court's denial of summary judgment, even when, you know, based on this ruling, which has simply been affirmed, but the ruling was already there and was the basis for the plaintiff's motion for summary judgment in the state court, that denial of summary judgment reflects that, that there were a number of other outstanding issues. So this as is, as stabilized appraisal affirmance is only resolved with one of the factual issues in the case, and there are others. But, you know, that being said, right now, you know, I've already discussed the receivership point. I won't go back over that. But with respect to the mortgage foreclosure, you know, Judge Lynch, you know, who, you know, I guess just to sort of note the elephant in the room, the author of the Niagara Mohawk case that both parties seem to agree is the leading case, noted that the district court didn't go through the factors for Colorado River abstention. And the problem with this decision is that we have no idea if and when the plaintiff will be in a position actually to pay us off. Even, even let's say that we lose across the board at some point, whether it's in the New York Court of Appeals or in the Bronx Supreme Court or whatever, we lose, lose, lose. And there's a judgment against us where we have to accept $31 million. Even then, if the plaintiff isn't ready, willing, and able to provide the money at that juncture, we end up holding the bag for this enormous unpaid loan amount. And that can't be right either. When the first department ruled that we were, you know, modified the preliminary injunction to permit us to seek enforcement of our loan agreement provisions through judicial process, the injunction remained with respect to non-judicial foreclosure steps. We did, we immediately acted to seek to vindicate our rights because we had this enormous loan outstanding. That is true. And it cannot be the law that we cannot simply, cannot get anything. We have no entitlement to being paid on this loan, you know, regardless of question of what may or may not have occurred in 2014, that that issue does not moot our entitlement to be paid. Now, Judge Lynch did note that it is quite, I'm sorry, please. What relief would you like at this point? We would like the, What would you like us to do? We would like you to vacate the order, staying the decision and remand to Judge Lynch. What I was about to say is, and it may be so obvious that it was a waste of your time. You don't want us to say anything about his analysis on Colorado River? Well, I assume you would have to have some basis for vacating his order. Yes, we would like you to say that the Colorado River factors don't favor the stay. Well, why should we say that? I mean, we have said repeatedly that we're not the ones who have the discretion to decide these factors, and we shouldn't be doing that in the first instance. I would think the logical thing to do here would be to send it back to Judge Morero, because he didn't do all of that, and ask him to proceed at such pace as he thinks is appropriate in light of the equities of the case and his caseload and whatever else is going on in the district court to address the Colorado abstention factors appropriately. And then you're back there and you deal with that and see what happens then. My apologies, Judge Lynch. I have two answers to that. Number one, I just want to sort of remind the court of my argument in my brief about FDIC, which is Judge Pooler's opinion, where because the federal court was the first to have a foreclosure proceeding before it, it was the first to obtain jurisdiction over the REM, and that is, we argue, dispositive. That was dispositive in that case, but the law is perfectly clear that no one factor is dispositive under Colorado River in every case. There's not an automatic who gets jurisdiction over the race. Moreover, it seems to me it's unclear who has jurisdiction over the race, to the extent that the state court has been at least asked to appoint a receiver and take over the property, and that happened before the federal court had jurisdiction. It's a rather complicated business to try to figure out how any of these factors apply, let alone all of them, when your principal point on appeal is that the district court oversimplified and didn't go through the work that it needed to go through. Judge Lynch, you're absolutely right. I would say that I think that the question of who obtained the jurisdiction is not quite so unclear. If one, for example, refers to the opinions that are cited in FDIC against Four Star, there are a number of Supreme Court cases that talk about what it means to take jurisdiction, and when to effect its jurisdiction, the court must take possession of the property, like on a foreclosure, as opposed to something like a receivership, which is ancillary to the primary remedy, etc. Also, we failed, or my predecessor counsel failed. This was years before I got involved. They didn't get the receivership, yes. There was never that control. Putting that to one side, the second part of my answer to your question is that I was answering Judge Walker's question, what I'd like you to do. Not that you necessarily take my cues, but that was my wish list, my sun, moon, and stars. If the court were to accept our, what I'll call a follow-back argument, or actually, I actually agree with Judge Lund says it's our primary argument, that the procedural steps were not followed, that the factors weren't properly weighed, that if the record had been made more clear by, for example, putting the complaint and the underlying action before the court and other, maybe full-blown briefing, then that certainly, I would not be crying a river at this court's decision. That would comport very clearly, I think, with this court's precedence with respect to what district courts are supposed to do in conducting a Colorado River analysis. I have to, probably a mistake. Yes, Judge Pooler, I'm sorry. Your time has long since expired. I apologize. You have reserved three minutes for rebuttal. We will hear from East Fordham. Thank you, Your Honor. Good afternoon, Your Honors. This is Brett Dockwell from Morrison-Cohen for It's clear from the court's questions to the appellant that the court understands what this case is about, and this case is about what happened on June the 14th of 2014, June 11th of 2014, because that was the day that the borrower, East Fordham, tendered full payments of the loan based upon the appraised value of the property at that time. The lender refused to tender. Everything that happens in this case flows from that single day. And Mr. Chatterjee's argument that the loan matured, well, of course it matured. They won't accept repayment. We're only here today because they wouldn't accept repayment. Well, Mr. Dockwell, I just want to make sure I understand your position. So your position is not that because they refused to tender, you get to keep the money? Well, do we get to keep the money? The question of the amount owed is still open to question. I understand. But the $31 million that you should have paid in 20, or that you assert, that you stood ready to pay and were entitled to pay and end the mortgage in 2014, at least that much, would you agree that you have to pay at least that much? We do, Your Honor. We do. And is your client prepared to pay that money now? Yes, Your Honor. Ready, willing, and able. In fact, we've tried three times, not only on June the 14th, but two subsequent times to repay the loan as well, and met with refusal from the lender. And so... So just in terms of, you know, I'm not trying to settle the case right here. And of course, there would be, there probably are negotiations, and I'm not inquiring into what those negotiations are. But to the extent that there's some argument here that the bank is going to be stuck with no money here, at least at this moment, as far as you're concerned, at least $31 million, they could take and be done with this problem. That's correct, Your Honor. Okay, just so I understand, because this goes to the question of the urgency of how vital it is for us to get the federal court back into this game and, you know, tell, dictate to Judge Marrero how the Colorado River inquiry should go, et cetera. It may not be as urgent as all that if they're prepared to negotiate, but they make their own decisions about this. I just wanted to make sure that you were not maintaining that they're not entitled anymore to the $31 million. No, Your Honor. We acknowledge that they're entitled to the amount that we tendered on June the 14th. The question is, what is paid today? And we've now received an affirmance from the Appellate Division this morning, which my adversary mentioned, which confirms that the amount that was tendered was calculated in compliance with the loan modification agreement. So we now know that the amount that was given on June the 11th of 2014 was the correct amount. And the only question is, what is paid today? They maintain, obviously, that there's all types of other interests that they're entitled to in default fees. We obviously maintain, since it was their mistake, that they're not entitled to any of that. And that's something that the state court will adjudicate. And in fact, that was basically what the state court said. And its summary judgment order was that there was a dispute over the events leading up to June the 11th, 2014. There were conflicting accounts in the affidavits that were submitted. And so the court said, I can't. And then the bank had said, well, we weren't able to really look into the appraisal because of a letter that was sent by the borrower. So what the court said is, go take some discovery on this narrow period leading up to the payoff date and then come back. And that's exactly what we've done. We've served subpoenas. And had it not been for the coronavirus, we likely would have had depositions already or in the very short future. I would like to address the receiver point. And I think Judge Lynch was correct on this, that the lender did invoke the in rem powers of the state court by asking the state court to appoint a receiver. That was a remedy under the mortgage, the same mortgage that they're trying to enforce in the district court. And the state court did not deny that motion because of lack of jurisdiction or anything else. It's not on the merits. And so the lender can't have it both ways where they say that the mere request for relief, as they do in the district court, invokes in rem jurisdiction in the district court, but that the request for in rem relief in the state court doesn't invoke in rem jurisdiction. We believe it does. And with In the first instance that was addressed by the state court and the decision and that's part of the record, there was no evidence that any proceeds were being misapplied or that the property was in any danger of destruction or foreclosure, tax sprint foreclosure. But putting that aside, it's true that the state court is functioning in a more limited capacity than the federal courts. But Chief Judge DeFiore issued an order, I guess it's two weeks later now, directing judges to conference their cases. If the lender has some concern about what's going on with the property, they could today ask for a conference with the court. And that would in no way violate the restrictions that are placed on filings in the state court system today. Now, I would like to address a point that I believe it was Judge Lynch, forgive me if I'm wrong on that, mentioned, which is the court's application of Colorado River and whether I guess really to get to it, whether the court's analysis was thorough or not. And I think that the key question here is really a question of appellate review, because this court has stated that Colorado River does not rest on a mechanical checklist. The Supreme Court has that as well. This court has also stated the courts are not bound to give weight to each factor. And so I think this court in, I'm sorry. So I think the question for this court is whether or not there's sufficient, I'm sorry, here we go. As this court stated in Mohawk, Niagara, that Colorado River decisions are reviewed under an abusive discretion. And what that means is basically this court needs to ensure that there was not a mistaken application of the law or clearly erroneous finding of facts. And importantly here, that the court, the lower court manifests sufficient regard for the federal court's obligation to hear cases. And that the court needs to demonstrate that there is no discretion to abstain if the case does not meet traditional abstention requirements. And the lower court's opinion certainly provides this court with sufficient, with an ability to conduct meaningful appellate review. And I would point out that in the cases in which this court has found the district court's analysis to be insufficient under Colorado River, they are decisions that are far more cursory than what Judge Morrero issued here. In the Village of Westfield case, which was a 1999 case before this court, the district court didn't even issue a written decision. The judge had made some comments from the bench and that was, which didn't even mention or discuss Colorado River. In the Burnett v. Physicians Online case, a 1996 case that came before this court, the entirety of the district court's opinion is recited in this court's opinion. And it is, it consists of exactly one sentence. And it says, in view of the fact that the summary judgment motion is now ripe for decision, it is appropriate for the federal court to abstain and see precisely what issues, if any, remain to be resolved following the state court decision. It is appropriate to apply the doctrine of Colorado River. That's the extent of the court's analysis in Burnett v. Physicians Online. Obviously, we've got a far more thorough decision from Judge Morrero here. In the Aventura case, a 2016 case that came before this court, there was no mention at all of the presumption in favor of exercising jurisdiction. And in the Bethlehem contracting case, another case before this court, 1985, this court said that it did not believe that the district, this court believed that the district court simply gave no weight to the heavy presumption favoring exercise of jurisdiction. And so in all of those cases, the problem with the lower court's reasoning was this court could not assure itself that the district court did not mistakenly apply the law and that the district court did not fail to give due consideration to the presumption in favor of jurisdiction in Colorado River. And that is not the case here. And in this instance, Judge Morrero acknowledged that the Colorado River applies in exceptional circumstances. He certainly understood the law and he went through the relevant factors. The facts are there. I'd like to just, I just have one question. I noticed that the judge in his, just before he, before his decreed a paragraph stated that upon the state court's resolution of Fordham summary judgment motion, the court will assess whether formal abstention is warranted. In other words, he's just trying to put a stay on everything for the time being. And he is prepared presumably to go back and revisit all of the extension criteria. Is, is, is that, is that a problem as far as you're concerned? It is not. It is not. And, and, and the reason being is that in his subsequent decision, he says that, that he has considered, considered the question in light of the state court's ruling and substantially for the reasons previously articulated, he formally exercised Colorado River, Colorado River abstention. So yeah, I think he's made clear in the subsequent order that he, he, he analyzed those factors in light of the new decision. So what's on appeal then? Is it the former, is the original order or the second order? Well, that, uh, the summary judgment motion hasn't been decided yet. Is that correct? Oh, no. Uh, the summary judgment motion has been decided your honor. And that, that was actually what precipitated the second order by judge Moreno in the summary judgment motion that the court granted partial summary judgment in favor of Fordham and denied summary judgment in favor of Fordham and also denied the lenders cross motion for summary judgment. And, and in that decision, the court said that there's some question of fact because of competing affidavits regarding the two week period before the July 11th, 2014 payoff. And so it sent the, the, the party to do very limited discovery on that narrow period of time and to then come back to the court so that the case can be resolved. Is that what he meant by the state court's resolution of the summary judgment motion? It hasn't been quite resolved yet because of the two weeks. He said upon the state court's resolution of the Fordham summary judgment motion, the court will assess whether formal abstention is required is warranted. Um, and, and I don't know what the state court resolution was at the time he issued this. But at the time, I'm sorry, go ahead, go ahead. At the time that he issued his initial order, his March or his, um, sorry, the June, the June order, correct. Uh, the summary judgment order was a summary judgment motion was still pending. And then in, in, uh, it was issued in June and, uh, brought back before judge or sent to judge Moreno so that he could review it in light of prior decision in order. And then he entered the order on July the 12th, adhering to his prior, uh, determination. Okay. What is I still, I don't, what is the, uh, I'm, I'm trying to go back, uh, on my, uh, uh, laptop now to look at the notice of appeal. Uh, but it is, I thought the appeal from, to us that we are now arguing is based on that original order of judge Moreno. So I'm not sure I even knew that there was a second, uh, order. Uh, is that just my confusion? The appeal is on the July 15th order decision and order is not correct counsel. That's my understanding. Although I would have to do the same, which is to, to, to find the notice of appeal. Um, actually let's see. Yes, it is from the, the, uh, decision and order entered on July the 15th. And that is the order that formally abstains, not the order, the initial order that we're abstaining until the summary judgment motion. Correct. Okay. And to be, just to be clear, in case I was not the summary judgment motion is was, it was partly granted and partly denied. Okay. But the case, the case is not finally decided yet. That's correct. Because there were tribal issues. In fact, thank you. Counsel for a us bank, you've reserved three minutes for a bottle. I'm going to try and keep you to the three minutes. Um, you may proceed. Hello. My apologies. I, I had, I had muted my phone as the deputy clerk instructed us before we all got on and I was talking away and then I'm sorry, I apologize for that. So, again, um, I just wanted to follow up on judge Walker's point. Um, the, the fact that judge Marrero issued this initial ruling saying, I'm going to hold off on deciding Colorado river until the summary judgment motion comes down, um, is actually quite important here. Uh, to be clear, uh, appendix, uh, one 87, uh, one 86, one 87 is one notice on appeal. Right. Confirms that the appeal was taken from the July 15th order, which he finally issued, um, staying the case indefinitely until final judgment in the state court, which is an appealable order. Um, the, the initial determination though, implied that he felt that the summary judgment determination would inform the Colorado river analysis. So when the court denied a summary judgment, a plaintiff that was predicated on the evidence, your hearing analysis, um, it, it, it, it granted, uh, the motions for summary judgment by the servicers and got them out of the case. Um, it denied our motion for determination of interest. Um, and then there were certain other issues that were denied that left the case over for determination, just as judge Pooler just said. Um, so it is a bit inexplicable why, you know, that decision came down four days after judge Marrero issued his interim decision. We told judge Marrero immediately that the summary judgment had been largely denied and judge Marrero then adhered to his decision. So it is a bit anomalous and troubling. Uh, so I understand judge Walker's, uh, concern about that. And I just wanted to address that sequence of events, um, with respect to, uh, Mr. Darkwell's point about chief judge D Fiore's order about the Corona virus conferences. Uh, it's my understanding that it's possible for judges to ask for conferences. I do not believe, uh, and I, I'm no expert on this, but I do not believe that I'm permitted to seek a conference from the state court under certain, certain circumstances because of the non-essential filings bar. But, um, the, the receivership issue really does turn on, um, you know, the fact that, um, right now, uh, we have had months and months before the Corona virus outbreak where, um, the, the Supreme court did not hold conferences despite letters from plaintiff requesting conferences. Uh, there has been no real substantial progress on discovery, uh, for five years in the state court. And I don't mean to disparage anyone. All I'm trying to say is that we are concerned about adequate protection, uh, in that court and this proceeding. Um, and we, we, you know, just, if we could just get a receiver appointed, that would be something that'd be very helpful. Um, counsel, this is just cool. Let me just restate the only issue before us is judge of that extension. Is that correct? The only issue that is correct, your honor, but the receivership on appeal and all discussion of what goes on in the state is pretty much irrelevant to our discussion of Colorado river abstention. Isn't that correct? Not exactly your honor. And I don't mean to be difficult. It's just that one of the Colorado rear factors is, um, what, uh, you know, what, what, what level of protection we're getting for our rights in state court and also parallel proceedings, which the district court concluded, they were right. And we take strong exception to that. Are you asking us to find that state of New York doesn't give you protection of your rights? We are asking for a much narrower ruling that your honor, I realized how repellent it is for me to say it that way. Um, but what I would say is that you're right. And I, and I regret the repellency of what I said, but what I'm, what I'm sort of recharacterizing it as is to say that in this particular proceeding, um, based on all the factors, including the delays and, and the, the, the failure to proceed, um, and the repeated need to get vacatures of these repeated injunctions, um, you know, we formed a view that we should avail ourselves of diversity jurisdiction in these circumstances. And we, we don't think that there's anything wrong with doing that. Um, so what I would say is that, uh, you know, with these other open issues, uh, the fact is that there is no evidence of the borrower's current ability to repay, um, the fact that this is a non-recourse loan, where we only are able to get any recourse through a foreclosure proceeding or receivership. Um, you know, these are all factors that we think weigh strongly in favor of the court exercising its discretion, not to stay under Colorado River. Um, you know, obviously Colorado River's abusive discretion standard is a slightly more rigorous one because of the courts on flagging obligation exercise jurisdiction. And I would say that, um, the, uh, need is for courts to adhere to the law correctly, even under an abusive discretion standard. Um, I know my time is up. Thank you very much, judge. Thank you very much.